IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTECH DIAGNOSTICS, INC., )
 )
    Plaintiff, )
 ) Civil Action No.: 12 C 2736
v. )
 ) Suzanne B. Conlon, Judge
DOWNERS GROVE ANIMAL HOSPITAL )
& BIRD CLINIC, P.C. *et al.*, )
 )
    Defendants. )
 )

## **MEMORANDUM OPINION AND ORDER**

Antech Diagnostics, Inc. sues Downers Grove Animal Hospital & Bird Clinic, P.C., Robert Merkin, and Graham Merkin in a two-count complaint for breach of contract and breach of a loan agreement. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).

### I. Background[1]

Antech provides veterinary laboratory services. It entered into a Lab Services Agreement, beginning January 1, 2009, with the animal hospital, owned by Robert and Graham Merkin. The agreement covers two areas. First, it provides that Antech would be the animal hospital's exclusive provider of laboratory services for five years with a minimum of at least $48,000

---

[1] The facts are taken from the complaint and from the agreement itself. Antech did not attach the agreement to the complaint. But defendants include a copy with their motion to dismiss. Because the agreement is referred to in the complaint, it may be considered on a motion to dismiss without converting it to a summary judgment motion. Fed. R. Civ. P. 10(c); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

1

annually. Along with the exclusivity provision, the agreement contains a confidentiality provision, covering the terms, conditions, and pricing information in the agreement. The other aspect of the agreement is a $50,000 loan from Antech to the animal hospital owner, to be repaid in annual installments of $10,000 plus interest. A loan payment would be forgiven if the animal hospital owner complied with the minimum yearly amount of services and the exclusivity provisions, and if he timely paid invoices for the previous year.

Antech alleges the animal hospital and its owners breached the exclusivity and confidentiality provision of the agreement and seeks damages of $133,884.55 in Count I. In Count II, Antech also alleges the animal hospital and its owners breached the loan terms by failing to comply with the exclusivity provision and with the minimum required amount of services and seeks $27,892.61 in damages.

## II. Analysis

The animal hospital and owners move to dismiss under Rule 12(b)(6). On a motion to dismiss for failure to state a claim, the court accepts as true the well-pleaded allegations of the complaint and draws all reasonable inferences in favor of the non-moving party. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). But if an allegation in the complaint conflicts with the written agreement, the agreement usually controls. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). The complaint must contain enough factual allegations to demonstrate a plausible right to relief and to provide defendants fair notice of the claim and the basis for it. *Appert*, 673 F.3d at 622. Facial plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555–56 (7th Cir. 2012)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The parties agree that California law provides the substantive law of decision in this diversity case.

**A. Count I**

The animal hospital and owners argue that Count I should be dismissed because the agreement does not permit damages beyond repayment of the loan. They cite paragraph 3.3, which states:

> 3.3 <u>Default</u>. If (i) [a required annual loan payment is not made]; or (ii) Animal Hospital Owner breaches the exclusivity provisions set forth in Section 1 hereof; or (iii) Animal Hospital Owner [fails to timely pay invoices], then such shall constitute an event of default with respect to the Loan. At any time after the occurrence of an event of default, Antech may declare the entire amount of the Loan to be due and payable, whereupon the Loan shall become forthwith due and payable without presentment, demand, protest or other notice of any kind . . . . The remedies available to Antech hereunder are intended to compensate Antech for the Loan and discounts provided hereunder, which Loan and discounts would not have been provided unless Animal Hospital agreed to the Minimum Average Annual Fee requirements set forth herein, the requirement set forth in Section 1 regarding exclusivity, and the payment for Laboratory Services hereunder in a timely manner.

The animal hospital and owners contend that this paragraph provides the only remedy in the event of a breach, and so Count I should be dismissed because it seeks unrecoverable damages.

The argument is unsupported by the agreement. The default provision clearly falls under the section of the agreement titled "3. **Terms and Conditions of Loan**," which contains paragraphs about the terms of the loan, forgiveness of the loan, and default. Def. Mem., Ex. B at § 3 (bold in original). The animal hospital and owners make no attempt to explain why the court should apply this provision to limit remedies for breaches unrelated to the loan agreement. Nor does any other provision in the agreement purport to limit remedies in the event of a breach.

More generally, the animal hospital and owners contend the damages sought in Count I

3

are improper because they represent lost profits. They argue lost profits may be recovered only if the parties expressly contemplated this remedy or if "exceptional circumstances" not present here exist. Def. Mem. at 5. This argument is not supported by California law. *See* Cal. Civ. Code § 3300 ("For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom"). Defendants confuse the difference between lost profits as general damages and lost profits as special damages. General damages are "a natural result of a breach" and "flow directly and necessarily from a breach of contract." *Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 102 P.3d 257, 261 (Cal. 2004). Special damages are "secondary or derivative losses arising from circumstances that are particular to the contract or to the parties." *Id.* They are recoverable only if the breaching party knew or should have known of the special circumstances at the time of contracting. *Id.* The unearned profits of the contract that was breached are usually general damages. *See id.* at 263. However, if the breach caused the injured party to miss out on other business opportunities, the profits lost from those collateral activities are special damages and recoverable only if the contracting parties contemplated them. Here, the damages sought relate directly to what Antech expected to receive from the animal hospital and owners under the contract and, if proven, is allowed as "what [Antech] would have received if the contract had been fully performed on both sides." *Id.* at 261; Cal. Civ. Code § 3358.

The last argument about Count I concerns Antech's calculation of damages. The animal hospital and owners assert Antech improperly seeks lost revenue without accounting for the

actual revenues generated under the agreement. Defendants ascertain that the damages Antech seeks are based on the contractual five-year requirement of at least $48,000 in services per year. There is sufficient notice of Antech's basis for the damage claim. Qualms about whether that amount must be offset goes to the merits of the claim and is not a basis for dismissing the complaint.

**B. Count II**

The animal hospital and owners' argument that the complaint insufficiently pleads damages on Count II is without merit. They contend Antech provides no detail about how it was damaged. A fair reading of the complaint reveals allegations that the animal hospital and owners failed to comply with the exclusivity provision and the minimum annual services requirement, breaching the loan agreement. The complaint does not explicitly allege that those purported breaches caused the loan to come due, but that is a reasonable inference, confirmed by the terms of the agreement. The complaint provides adequate notice of the claim.

The animal hospital and owners' memorandum questions whether Count II is moot. They contend that they tendered the outstanding loan amount to Antech on March 1, 2012. If Antech has received its requested relief, no case or controversy remains for the court to decide, depriving it of subject matter jurisdiction. *See Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1125 (7th Cir. 1996). However, the animal hospital and owners do not provide evidence that a payment was made, and the court cannot consider an unsupported assertion outside the four corners of the complaint on a motion to dismiss.

**C. Liability of Individual Defendants**

The individual defendants contend they should be dismissed because they are not

signatories to the contract. Robert Merkin contends he did not sign the agreement, and Graham Merkin contends he signed in his capacity as an officer of the animal hospital, not in his personal capacity.

Within the four corners of the complaint, Antech alleges it entered into the agreement with "Defendants," implying the animal hospital and both owners are all parties to the agreement. Compl. ¶ 8. Allegations in the complaint may be disregarded if contradicted by the actual agreement. *Massey*, 464 F.3d at 645. However, the agreement, without more, fails to support the conclusion that Robert and Graham Merkin are not contractually bound. There are affirmative provisions, unaddressed by defendants, that contradict their contentions.

First, the agreement lists the parties as:

**Antech:**              Antech Diagnostics
**Animal Hospital(s):**  **Downers Grove Animal Hospital**
**Owner(s):**            Robert Merkin, D.V.M., Graham Merkin, D.V.M.

Def. Mem., Ex. B at p.1 (emphasis in original). The agreement states that it "is entered into by and between Antech Diagnostics ('**Antech**') and the party or parties listed below as '**Animal Hospital Owners(s)**' as of the Effective Date . . . ." *Id.* (bold in original). The agreement is peppered with references to duties specifically assigned to the animal hospital owner:

- "Animal Hospital Owner is required to utilize Antech to provide Laboratory Services required by Animal Hospital(s) . . ."; *Id.*

- "The obligations of Animal Hospital Owner with respect to the Minimum Average Annual Fee . . ."; *Id.*

- "During the Term, Animal Hospital Owner shall cause all veterinary diagnostic and clinical laboratory services . . . that are to be performed for and on behalf of the Animal Hospital(s), to be performed by a veterinary diagnostic laboratory owned by Antech . . . ." *Id.*, Ex. B ¶ 1.1.

6

- If the laboratory services are unsatisfactory and are not remedied, "Animal Hospital Owner may at the time elect to terminate the contract and pay back a pro rated portion of the unforgiven loan." *Id.*, Ex. B ¶ 1.2.

- Without authorized written consent, "Animal Hospital Owner and Antech Officers shall not . . . publicly disclose, advertise, or publish the existence of the Agreement or any terms of this Agreement . . . ." *Id.*, Ex. B ¶ 4.

The agreement also specifically grants a benefit to the owners, loaning $50,000 to "Animal Hospital Owner," not to the animal hospital. *Id.*, Ex. B at p. 1. The loan conditions require "Animal Hospital Owner" to make loan payments, and provides loan forgiveness if "Animal Hospital Owner" complies with certain conditions relating to the laboratory services. *Id.*, Ex. B at ¶¶ 3.1, 3.2. Additionally, the signature line of the agreement is titled "**ANIMAL HOSPITAL OWNER**." *Id.*, Ex. B at p. 4 (emphasis in original). At no point in the agreement is the animal hospital identified as a professional corporation or is its legal status otherwise identified.

The animal hospital and owners do not address these references to "Animal Hospital Owner" in the agreement. Their argument that the agreement is between Antech and the animal hospital cannot be sustained because of repeated references to "Animal Hospital Owner" as a contracting party.

Defendants argue that Robert Merkin cannot be held liable for breach of contract because he did not sign the agreement. They assert Graham Merkin signed the agreement (purportedly in his capacity as an officer of the animal hospital). This argument lacks merit on a motion to dismiss for two reasons. First, the signature on the agreement is illegible, and the court cannot make a finding of fact about who signed it on a motion to dismiss. Second, California law provides that a nonsignatory may be deemed to have consented to a contract by voluntarily accepting the contract's benefits. *See* Cal. Civ. Code § 1589 ("A voluntary acceptance of the

7

benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting"); *Recorded Picture Co. [Prods.] Ltd. v. Nelson Entm't, Inc.*, 61 Ca. Rptr. 2d 742, 748–49 (Cal. App. Ct. 1997) (discussing § 1589). Both Robert and Graham Merkin are identified in the agreement as "Animal Hospital Owner" and the agreement sets forth several obligation and benefits specifically for "Animal Hospital Owner," not "Animal Hospital." Because both owners' names were included in the agreement, it is a reasonable inference that the non-signing owner received benefits with knowledge of the obligations under the agreement and may be deemed to have consented to the agreement. Drawing reasonable inferences in Antech's favor, the complaint states a basis for liability against both individual defendants.

### III. Conclusion

The motion to dismiss the complaint is denied.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

June 29, 2012